# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| RICHARD H. RINEHART, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 16 C 9556 |
| v. | ) | |
| | ) | Magistrate Judge |
| NANCY A. BERRYHILL,[1] Acting | ) | Cox |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Richard H. Rinehart ("Plaintiff") appeals the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his disability insurance benefits ("DIB") under Title II of the Social Security Act. Plaintiff filed a brief [dkt. 16] to reverse or remand the decision of the Commissioner of Social Security, and Defendant responded with a motion for summary judgment. [dkt. 23]. We hereby construe Plaintiff's brief in support of reversing the decision of the Commissioner as a motion. For the following reasons the Commissioner's Motion for Summary Judgment is granted and Plaintiff's brief is denied.

## I. Background

### a. Procedural History and Plaintiff's Background

Plaintiff filed a Title II application for disability and DIB on January 2, 2013. (Administrative Record ("R") 214-15). Plaintiff alleged an onset date of disability beginning on August 16, 2012. (R. 214). Plaintiff's claim was denied initially on April 19, 2013 and again at the reconsideration stage on September 26, 2013. (R. 126-55, 162-65). Plaintiff timely requested an

---

[1] Nancy A. Berryhill is substituted for her predecessor, Carolyn W. Colvin, pursuant to Federal Rule of Civil Procedure 25(d).

administrative hearing, which was held on March 12, 2015 before Administrative Law Judge ("ALJ") Lee Lewin. (R. 40, 166). Plaintiff was represented by counsel, and both a Medical Expert ("ME") and a Vocational Expert ("VE") testified during the hearing. (R. 83-124). On April 3, 2015, the ALJ issued a written decision denying Plaintiff disability benefits. (R. 17-35). On August 5, 2016, the Appeals Council denied Plaintiff's appeal, and the ALJ's decision became the final decision of the Commissioner. (R. 1-6). Plaintiff filed the instant action on October 6, 2016. [dkt. 1].

Plaintiff was born on September 9, 1960, and was 51 years old on his alleged disability onset date. (R. 34). Plaintiff suffers from primarily mental and social limitations. Plaintiff's medical records reveal diagnoses of bipolar II disorder, alcohol dependence, adult ADHD, social phobia and HIV. (R. 434, 27). Plaintiff testified that he has been sober since June 4, 2010. (R. 62).

Plaintiff's medical records begin in August of 2012[2] when Plaintiff saw Dr. Todd Hargan, M.D. (R. 321). Dr. Hargan noted on August 17, 2012 that Plaintiff had lower energy, decreased mood and anger since he stopped testosterone. (R. 339). Dr. Hargan then started Plaintiff on monthly testosterone injections which continued into 2013. (R. 321-39, 347-68). Dr. Hargan also continued Plaintiff on Celebrex. (R. 339). Soon after, Dr. Hargan referred Plaintiff for a psychological evaluation for anxiety and anger symptoms. (R. 338). Dr. Hargan opined that Plaintiff had lipodystrophy, or fat redistribution, common in HIV patients due to their medications, and he discussed treatment options with Plaintiff. (R. 337, 397, 28). Plaintiff continued to see Dr. Hargan throughout 2013, during which Dr. Hargan indicated that Plaintiff's anxiety was not well controlled on several occasions. (R. 409, 412, 449). Then in April of 2014, Dr. Hargan noted Plaintiff had a headache associated with muscle spasm when he followed up for

---

[2] The record request cover page indicates that Dr. Hargan had treated Plaintiff prior to August 2012, but due to Dr. Hargan moving his office, the previous records remained at the old office. (R. 320). A review of the Record shows that these previous records were not obtained.

his HIV. (R. 457-58). In July of 2014 Plaintiff reported the muscle spasm had resolved. (R. 460).

On March 28, 2013, Plaintiff saw Dr. Robert V. Prescott, Ph.D, for a formal mental status evaluation for the bureau of Disability Determination Services ("DDS"). (R. 386-91). Plaintiff reported to Dr. Prescott that he was not currently receiving any mental health treatment. (R. 387). Dr. Prescott diagnosed Plaintiff with major depression; moderate, intermittent explosive disorder; anxiety disorder; alcohol abuse that is currently in remission according to Plaintiff; and adult antisocial activities. (R. 390). Dr. Prescott opined Plaintiff would be unable to handle funds and performed a "little less well than expected" given his age, educational and work history on the cognitive portion of the evaluation. (*Id.*) However, Dr. Prescott also noted that Plaintiff lives by himself and is able to dress and bathe himself, use public transportation, and do his own laundry. (*Id.*) Additionally, Dr. Prescott noted Plaintiff could recall four of five items after a five-minute delay. (R. 389).

On that same day, Plaintiff reported to Dr. Donald F. Pochyly, M.D., for an internal medicine consultative examination for DDS. (R. 397-400). Plaintiff reported that he had poor memory due to excessive alcohol intake for 30 years and was taking Trazadone, Cymbalta, and Alprazolam for depression and anxiety. (R. 397). On examination, Plaintiff had normal ranges of motion for his joints except for the left shoulder, which had limited ranges of motion and was tender to inspection. (R. 398).

A note from Dr. Mark Gindi, M.D. on November 12, 2013 indicated Plaintiff had a current Global Assessment of Function ("GAF")[3] score of 65. (R. 441). Dr. Gindi also recommended that

---

[3] Although the GAF is not used in the most recent version of the Diagnostic and Statistical Manual of Mental Disorders ("DSM V"), it was used in the previous version of that text ("DSM IV"), and is often relied on by doctors, ALJs, and judges in social security cases. *See Steele v. Colvin*, No. 14 C 3833, 2015 WL 7180092 at *1 (N.D. Ill. Nov. 16, 2015). The lower the score, the greater the degree of impairment. *Id.* A score between 41 and 50 indicates "serious symptoms" such as suicidal ideation, severe obsessional rituals, or frequent shoplifting or "any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job, cannot work)." A score between 51 and 60 represents "moderate

3

Plaintiff continue taking Seroquel, Trazodone, Cymbalta, and start psychotherapy. (*Id.*)

On August 14, 2013, Plaintiff saw Dr. Robert Shulman, M.D., complaining of anxiety, anger and emotional dysregulation. (R. 431). Plaintiff informed Dr. Shulman of his prior alcohol abuse and reported that he used to drink a liter of vodka daily, until a successful recovery three years ago. (*Id.*) Plaintiff reported that after achieving sobriety, his moods worsened especially after being fired from his job. (*Id.*) Dr. Shulman also noted that Plaintiff has a long history of social anxiety that was masked by his drinking. (*Id.*)

Upon examination, Dr. Shulman noted normal findings, including concentration within normal limits and coherent thoughts. (R. 434). Plaintiff was cooperative and alert, but his mood was anxious and depressed. (*Id.*) Dr. Shulman diagnosed bipolar II disorder, alcohol dependence, adult attention deficit disorder, and social phobia. (*Id.*) Dr. Shulman gave a current GAF score of 51-60, indicating moderate symptoms or moderate difficulty in social, occupational, or school functioning. (*Id.*)

Plaintiff continued to see Dr. Shulman over the next few months upon which various medications were tried. (R. 558, 552, 545, 539). Then, on March 10, 2014, Plaintiff reported that he felt like he was "at an even keel" and despite some persisting inattention and poor concentration, he felt much better overall. (R. 528). The following month, Dr. Shulman again adjusted Plaintiff's medication to help with Plaintiff's continuing difficulty with concentration. (R. 521). In June of 2014, Plaintiff had better focus and concentration and stable a mood. (R. 515). Then, in August of 2014, Dr. Shulman noted Plaintiff as being stable and benefiting from Nuvigil, along with better concentration. (R. 501). Dr. Shulman also noted that Plaintiff had become very involved with running Dual Diagnosis Anonymous ("DDA") groups. (*Id.*)

---

symptoms" or "moderate difficulty in social, occupational, or school functioning." *Id.* Anything above 60 would indicate mild symptoms. *Id.*

In September of 2014, Plaintiff reported that he developed side effects to Nuvigil and was back to the baseline in terms of focus and concentration. (R. 496.) The following month Dr. Shulman noted that Plaintiff had no overt irritability and mood was much more stable. (R. 489). Dr. Shulman also noted that Plaintiff had not tried Deplin medication yet due to cost. (*Id.*) Upon mental status examination, Dr. Shulman indicated Plaintiff was within normal limits. (R. 490).

Plaintiff also saw Dr. Hargan twice in October of 2014 and Dr. Hargan indicated there was some setback in Plaintiff's HIV treatment. (R. 467, 470). Dr. Hargan noted that Plaintiff's non-compliance caused the last regimen to fail, but that now Plaintiff reported he fixed the issue that caused the non-compliance. (R. 470). Dr. Hargan also continued to treat the neuropathy in Plaintiff's feet with Cymbalta. (R. 471).

On January 21, 2015 Dr. Shulman completed a mental impairment questionnaire. (R. 473-78). Dr. Shulman gave a current GAF score of 65 and stated Plaintiff had no overt abnormalities on mental exam. (R. 473). Dr. Shulman also noted however, Plaintiff can still experience impulsivity, some irritability, impatience and distractibility. (*Id.*) Dr. Shulman indicated Plaintiff had marked limitations in difficulties in maintaining social functioning and deficiencies of concentration, persistence or pace. (R. 477). Dr. Shulman also opined that there had been one or two episodes of decompensation. (*Id.*)

### b. The ALJ's Decision

The ALJ issued a written decision on April 3, 2015 following the five-step analytical process required by 20 C.F.R. 404.1520. (R. 20-35). As an initial matter, the ALJ found that Plaintiff met the insured status requirements of the Act through December 31, 2016. (R. 22). At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity from the alleged onset date of August 16, 2012 through the date last insured of December 31, 2016. (*Id.*) At step two, the ALJ concluded that Plaintiff had the severe impairments of bipolar disorder II (BP II),

personality disorder, generalized anxiety disorder (GAD)(also diagnosed as social phobia and panic disorder), attention deficit disorder (ADHD), human immunodeficiency virus (HIV) infection, and left shoulder arthritis (DJD). (*Id.*) Other impairments were to determined to be non-severe. (R. 22-23). At step three, the ALJ concluded Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment. (R. 23-26). Prior to step four, the ALJ found that through the date of last insured, Plaintiff maintained the residual function capacity ("RFC") to perform light work, except that he could perform simple, routine, repetitive tasks; can have occasional, brief, and superficial contact with co-workers, supervisors, and the general public; can tolerate proximity to co-workers but cannot perform conjoined tasks, teamwork, or group work; can make independent decisions and can tolerate routine workplace changes, but cannot tolerate fast-paced production rate or strict quota requirements. (R. 26).

In making this finding, the ALJ determined Plaintiff's general credibility to be undermined and his allegations to be "exaggerated because they are not well supported by the medical evidence of record." (R. 30). Factors considered by the ALJ included that there was no significant progression of Plaintiff's HIV or manifestations or mental impairments, and extensive range of daily activities which were inconsistent with alleged levels of social phobia, memory loss or pain. (*Id.*)

Second, the ALJ gave little weight to the medical opinion of Plaintiff's treating physician, Dr. Shulman, and the mental impairment questionnaire he completed on January 21, 2015. (R. 30). The ALJ determined Dr. Schulman's opinion to be inconsistent with the record and that there was insufficient explanation or support for his opinion. (R. 31). The ALJ also explained that Dr. Schulman's opinions were not supported by the evidence to show one or two episodes of decompensation. (*Id.*) The ALJ stated that this "suggests he may not be aware of the definition of

these concepts by the Social Security disability standards." (*Id.*)

Third, the ALJ gave little weight to Dr. Hargan, who treated Plaintiff's HIV longitudinally. (R. 31). The ALJ also found that Dr. Hargan's opinions were not explained sufficiently when marking that Plaintiff was incapable of tolerating low stress jobs. (R. 31, 572). This was in light of the normal mental examination findings in his treatment records and good control of HIV manifestations with compliance. (*Id.*)

Fourth, the opinions of the state agency physicians and psychologists were given little weight because there had been considerable development of the medical record after they formed their respective opinions. (R. 32-33). The ALJ gave the greatest weight to Dr. Mark Oberlander, Ph.D, the ME[4] who testified at Plaintiff's hearing. (R. 33). The ALJ stated that Dr. Oberlander reviewed the entire record and extensively questioned Plaintiff at the hearing. (*Id.*) The ALJ "essentially adopted" Dr. Oberlander's mental RFC because it was supported by the record as a whole. (*Id.*)

At step four, the ALJ concluded Plaintiff was not capable of performing his past relevant work as a flight attendant. (R. 34.) Finally, at step five, the ALJ found there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. (*Id.*) Specifically, the ALJ relied upon testimony from the VE in concluding that Plaintiff could perform light work such as a housekeeper, food preparer, and packer. (R. 35). Because of this determination, the ALJ found Plaintiff not disabled under the Act. (*Id.*)

**c. Issues Before the Court**

Plaintiff raises two primary arguments on appeal. First, Plaintiff argues that the ALJ's symptom analysis is erroneous. Second, Plaintiff contends that the ALJ's RFC assessment is not

---

[4] The record refers to Dr. Oberlander as a medical expert and as psychological expert in the transcript without further clarification. (R. 33, 40, 203).

7

supported by substantial evidence. The Court addresses each of these issues in turn.

## II. Social Security Regulations and Standard of Review

The Social Security Act requires all applicants to prove they are disabled as of their date last insured to be eligible for disability insurance benefits. ALJs are required to follow a standard five-step test inquiry to assess whether a claimant suffers from a disability as defined in the Social Security Act. The ALJ must determine: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the severe impairment meets or equals impairment listed by the Commissioner; (4) whether the claimant is capable of performing past relevant work; and (5) considering the claimant's age, education, and prior work experience, whether they are capable of adjusting to other work in the national economy. 20 C.F.R. § 404.1520. An affirmative answer leads either to the next step, or at steps 3 and 5, a finding of disabled. A negative answer at any point other than step 3 leads to a finding of not disabled. *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000). The burden of proof rests with the claimant in steps one through four, and shifts to the Commissioner in step five. *Id*.

Section 405(g) of the Compilation of The Social Security Laws states "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Judicial review of the ALJ's decision is limited to determining if the final decision of the Commissioner of Social Security is based upon substantial evidence and the proper legal criteria. *Scheck v. Barnhart*, 357 F.3d 697, 699 (7th Cir. 2004). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). In reviewing a commissioner's decision, the Court may not "reweigh evidence, resolve conflicts in the record, decide questions of credibility, or, in general, substitute [its] own judgment for that of the Commissioner." *Young v. Barnhart*, 362 F.3d 995, 1001 (7th

Cir. 2004). Even where "reasonable minds could differ" or an alternative position is also supported by substantial evidence, the ALJ's judgment must be affirmed if supported by substantial evidence. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008); *Scheck*, 357 F.3d at 699.

Although not required to address every piece of evidence when denying benefits, "the ALJ's analysis must provide some glimpse into the reasoning behind her decision to deny benefits." *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001). The reasoning must "build an accurate and logical bridge form the evidence to his conclusion," sufficient to allow a reviewing court an ability to assess the findings and provide the claimant meaningful judicial review. *Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014); *Clifford*, 227 F.3d at 872. "An ALJ has a duty to fully develop the record before drawing any conclusions ... and must adequately articulate his analysis so that we can follow his reasoning." *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005).

**III. Discussion**

### A. The ALJ's Assessment of Plaintiff's Subjective Symptom Statements was Supported by Substantial Evidence

Plaintiff argues that the ALJ erred in assessing his subjective symptom statements and credibility pursuant to Social Security Ruling ("SSR") 16-3p. In 2016, the Commissioner rescinded SSR 96-7p and issued SSR 16-3p, eliminating the use of the term "credibility" from the symptom evaluation process, but clarifying that the factors to be weighed in that process remain the same. *See* SSR 16-3p, 2016 WL 1119029, at *1, *7 (March 16, 2016). The ruling makes clear that ALJs "aren't in the business of impeaching claimants' character," but does not alter their duty to assess the credibility of pain *assertions* by applicants, especially as such assertions often cannot be either credited or rejected on the basis of medical evidence." *Cole v. Colvin*, 831 F.3d 411, 412 (7th Cir. 2016) (emphasis in original).

9

However, the Social Security Administration recently clarified that SSR 16-3p only applies when ALJs "make determinations on or after March 28, 2016," and that SSR 96-7p governs cases decided before the aforementioned date. *See* Notice of Social Security Ruling, 82 Fed. Reg. 49462 n.27 (Oct. 25, 2017). Here, the ALJ issued his decision on April 3, 2015. (R. 17). Therefore, SSR 16-3p does not apply retroactively and the ALJ properly applied SSR 96-7p. As discussed below, even if Plaintiff were correct and only SSR 16-3p was to apply, it is immaterial.

According to the SSR 96-7p, "[i]n determining the credibility, the adjudicator must consider the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements, information provided by treating or examining physicians or psychologists or other persons about the symptoms and how they affect the individual, and any other relevant evidence in the case record." SSR 96-7p. Moreover, SSR 96-7p goes on to say that a "determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Id*. A court will affirm a credibility determination as long as the ALJ gives specific reasons that are supported by the record for his findings. *Skarbek v. Barnhart*, 390 F.3d 500, 505 (7th Cir. 2004).

The lack of objective evidence is not by itself reason to find a Plaintiff's testimony to be incredible. *See Schmidt v. Barnhart*, 395 F.3d 737, 746-47 (7th Cir. 2005). The ALJ must also consider "(1) the Plaintiff's daily activity; (2) the duration, frequency, and intensity of pain; (3) the precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of medication; and (5) functional restrictions." *See Scheck v. Barnhart*, 357 F.3d 697, 703 (7th Cir. 2004); *see also* SSR 96-7p at *3. An ALJ may not discredit a claimant's testimony about his symptoms "solely because there is no objective medical evidence supporting it." *Villano*, 556 F.3d at 562 (citing 20

C.F.R. § 404.1529(c)(2)); *see Johnson v. Barnhart*, 449 F.3d 804, 806 (7th Cir. 2006) ("The administrative law judge cannot disbelieve [the claimant's] testimony solely because it seems in excess of the 'objective' medical testimony."). Even if a claimant's symptoms are not supported directly by the medical evidence, the ALJ may not ignore circumstantial evidence, medical or lay, which does support claimant's credibility. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539-40 (7th Cir. 2003). SSR 16-3p, like former SSR 96-7p, requires the ALJ to consider "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." SSR 16-3p, at *4.

Here, the ALJ properly considered the factors set forth above and provided specific and well-supported reasons for his conclusions. In regards to Plaintiff's physical limitations, Plaintiff directs the Court to his testimony regarding his daily gym attendance in an attempt to support his allegations of being disabled. However, this testimony only further solidifies the ALJ's finding. During the hearing the ALJ asked Plaintiff about his trips to the gym. (R. 51). Plaintiff testified that it takes 30 minutes to walk to the gym, but he has to stop about every twelve minutes because of neuropathy in his feet. (R. 50-51).

Next, when asked about what he does at the gym, Plaintiff testified that he does "ab" workouts and weight training. (R. 51-52). Plaintiff further testified that "what I truly get out of it is walking to the gym and walking home," explaining that this was because it allowed him to be in "his own world." (R. 52). Additionally, the ALJ considered Plaintiff's other daily activities such as taking public transportation regularly and leading a self-help group three times a week. (R. 30). The ALJ found that this evidence did not substantiate Plaintiff's testimony of virtual complete inability to be around others. (*Id.*)

In regards to his mental limitations, Plaintiff argues that the ALJ stated he would give him the benefit of the doubt, but failed to do so by adopting the ME's testimony which did not give Plaintiff any benefit of the doubt. The ALJ discussed Plaintiff's testimony regarding daily memory loss and misplacing things, but noted that it was not supported by objective evidence in the record. (R. 30). A review of the record supports this finding in that there are no doctor's notes stating Plaintiff complained of memory problems, only what was discussed at the hearing.

Although an ALJ may not discount a claimant's pain allegations based solely on a lack of supporting objective evidence, 20 C.F.R. § 404.1529(c)(2), the ALJ may consider that factor "as probative" in assessing the claimant's symptoms. *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000); *see also Jones v. Astrue*, 623 F.3d 1155, 1161 (7th Cir. 2010) (noting that "discrepancies between the objective evidence and self-reports may suggest symptom exaggeration.").

The ALJ broke down Plaintiff's subjective complaints and gave each respective complaint an explanation as to why the record did not support Plaintiff's allegations. (R. 33-34). The ALJ limited Plaintiff to a range of light work because of manifestations from HIV medications, some left shoulder pain, and some lower extremity neuropathy. The ALJ explained that although Plaintiff had reports of exacerbations of pain, he also had many normal examinations and had engaged in daily activity that was inconsistent with having sedentary limitations. (R. 33).

In sum, it is well-established that "[n]ot all of the ALJ's reasons must be valid as long as *enough* of them are." *Halsell v. Astrue*, 357 Fed.Appx. 717, 722-23 (7th Cir. 2009)(emphasis in original). The Court agrees with the Commissioner that Plaintiff has failed to show that the ALJ's subjective symptom evaluation was unreasonable or unsupported by substantial evidence. The Court is satisfied with the ALJ's analysis and finds that the ALJ's conclusion regarding Plaintiff's

subjective symptom statements is supported by substantial evidence.[5]

### B. The ALJ's RFC Assessment is Supported by Substantial Evidence

Lastly, Plaintiff contends that the ALJ's RFC assessment is not supported by substantial evidence, namely because the ALJ erred in evaluating deficits with concentration, persistence or pace, erred in considering deficits in social functioning, and failed to give proper weight to the opinion evidence. A plaintiff's RFC is an administrative assessment of what work-related activities an individual can perform despite his limitations. 20 C.F.R § 404.1545; Social Security Ruling ("SSR") 96-8p; *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2011). In assessing a plaintiff's RFC, the ALJ must consider both medical and nonmedical evidence in the record. *Id.* Additionally, the ALJ's RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts. SSR 96-8p; *see also Brisco ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005). For the reasons that follow, the Court concludes that the ALJ's RFC determination is supported by substantial evidence.

#### 1. Concentration, Persistence, or Pace and Social Functioning

Plaintiff argues that contrary to the ALJ's conclusion, Plaintiff's allegations are not exaggerated and are well supported by the record. Plaintiff directs the Court to his own testimony when the ALJ inquired about Plaintiff's difficulties with concentration. However, this testimony does not undermine the ALJ's reasoning as Plaintiff would have it. When Plaintiff was asked by the ALJ how his concentration would affect his ability to work, he gave an example of an incident where he misplaced his sewing kit. (R. 68-69). Plaintiff testified that incidents like this would happen daily, and that his treatment provider was aware of this problem. (R. 70). However,

---

[5] In regards to Plaintiff's physical limitations, Plaintiff additionally argues that the ALJ did not give him the "benefit of the doubt", as stated in his decision, for if he had, a Grid Rules determination under 201.14 would have been rendered. In order to prevail on his Grid theory, Plaintiff must establish that the ALJ's RFC determination that he can perform light work is not supported by substantial evidence. As will be discussed in the next section, Plaintiff has not established that the ALJ's RFC determination is unsupported by substantial evidence.

Plaintiff does not direct the Court to any objective evidence in which a treatment provider indicated Plaintiff reported this problem. Additionally, Plaintiff testified that another way his concentration problems would affect his work was his fear that "Dr. Jekyll, Mr. Hyde" would come out. (*Id.*)

Here, the ALJ found that Plaintiff had moderate difficulties with concentration, persistence or pace. (R. 24). The ALJ based this finding on treatment records from Plaintiff's treating psychiatrist who described Plaintiff as having poor concentration after trying various medications. (*Id.*) The ALJ contrasted this with the consultative examiner's note that Plaintiff was attentive, had intact memory and is able to pay for bills and live independently. (R. 25.) The ALJ also noted that Plaintiff appeared to have mild difficulty with concentration at the hearing, but also took into consideration Plaintiff's reports of how his past alcohol abuse affected his memory. (*Id.*) The Court agrees with the Commissioner that Plaintiff has not shown that the evidence calls for a more restrictive RFC.

In regards to Plaintiff's deficits in social functioning, the ALJ found Plaintiff had moderate difficulties, citing to Plaintiff's reporting's of difficulty getting along with others, including family members. (R. 24). To account for these moderate difficulties, the ALJ limited Plaintiff to have only occasional contact with the public, co-workers and supervisors. (R. 33). The ALJ further limited Plaintiff to be precluded from production rate stress, and tandem tasks at work. The ALJ measured this against Plaintiff's lack of any previous incarcerations or arrests, and no inpatient treatment due to suicidal ideation or social anxiety.

Plaintiff argues that the record shows he has no ability to get along with others, even on a superficial basis. Plaintiff also argues that the VE testified superficial contact meant "stopping in throughout the day" and that Plaintiff is not capable of having such contact. [dkt. 16, pg. 10]. (R. 121). However, Plaintiff does not direct the Court to any evidence that was not considered by

14

the ALJ or that would show Plaintiff is not capable of superficial contact. The ALJ discussed objective medical evidence which included Plaintiff's ceasing to see his therapist due to his bipolar symptoms being under control. (R. 27, 32). Moreover, his testimony regarding his ability to go to the gym daily, his ability to lead a group three times a week, and that he had been a flight attendant for over 20 years. The ALJ's evaluation of these symptoms was supported by substantial evidence and Plaintiff has failed to offer a persuasive or well-developed argument to the contrary.

**2. The ALJ Properly Weighed the Medical Opinion Evidence**

Plaintiff further argues that it was error for the ALJ to afford little weight to his treating physicians, Dr. Shulman and Dr. Hargan, improper consideration of social worker Jason McVicker, and to conclude that there is no evidence of decompensation. Plaintiff also argues that significant alterations of medications for his ADD and fluctuating mood are evidence of decompensation. [dkt 16, pg. 10]. The Court agrees with the Commissioner that the ALJ adequately explained why little weight was given to Plaintiff's treating physician's opinions and that there were no episodes of decompensation.

**a. Dr. Shulman**

First, the ALJ recognized Dr. Shulman had a longitudinal treating relationship with Plaintiff. (R. 30). However, the ALJ explained that the fact Dr. Shulman is a treating source is outweighed by the inconsistency of the opinions or the lack of explanation or support for his opinions. (R. 31). The ALJ highlighted inconsistencies with Dr. Shulman's opinions such as stating that Plaintiff has no overt abnormalities upon mental status examination, but then marked that Plaintiff had limitations on the mental questionnaire. (R. 32). Many of Plaintiff's mental status examinations were normal, yet Dr. Shulman gave a GAF score of 51 to 60 which is more consistent with moderate symptoms. (R. 31). A review of the record reveals that almost all of Dr. Shulman's notes were void of much substance to support the conclusions he made in the

questionnaire.

Dr. Shulman completed a Medical Impairment Questionnaire in which he opined that Plaintiff had marked limitations in concentration, persistence, or pace and maintaining social functioning, and one to two repeated episodes of decompensation lasting at least two weeks within a twelve month period. (R. 477). The ALJ found there was no evidence in the record of any inpatient, or intensive, psychiatric treatment after the alleged onset date that would support Dr. Shulman's finding that Plaintiff had suffered one or two episodes of decompensation. (R. 25, 31). The Court agrees with the Commissioner that this is consistent with Dr. Oberlander's opinion, whom the ALJ gave great weight, that Plaintiff had not experienced any periods of decompensation. (R. 100). Dr. Oblerander testified that Dr. Shulman failed to identify which of Plaintiff's diseases he was referring to in regards to decompensation. (R. 112). Dr. Oblerander testified that even if a disease was specifically identified, there was no evidence decompensation for any of Plaintiff's diseases. (R. 113).

Dr. Oberlander was also questioned at the hearing regarding Plaintiff's medication schedule, and still concluded that this did not amount to an episode of decompensation. (R. 100-01, 108-113). This is supported by Plaintiff's medical records which show that his mental examinations did not show significant changes even when switching medications. (R. 481-483, 496-97). Thus, the Court is able to follow the ALJ's reasoning for giving Dr. Shulman's opinion little weight and the ALJ's determination that Plaintiff did not experience episodes of decompensation is supported by substantial evidence.

### b. Dr. Hargan

Plaintiff also argues that Dr. Hargan's notes were consistent throughout the record. The ALJ acknowledged that Dr. Hargan was a treating source but, similarly to Dr. Shulman, determined that factor was outweighed by the inconsistency of his opinion with the record, and

16

lack of explanation or support. (R. 31). The ALJ took note of Plaintiff's longitudinal treatment with Dr. Hargan for HIV, but found that Plaintiff's moderate anxiety and depression reported did not justify work-preclusive stress intolerance as opined by Dr. Hargan. (R. 31). A review of the record confirms that Dr. Hargan did not adequately explain his findings, even when given the opportunity to do so. (R. 573-76). The Court agrees with the Commissioner that Plaintiff has not pointed to any evidence that the ALJ did not consider and it is not the Court's duty to re-weigh the record evidence.

### c. Social Worker McVicker

Finally, Plaintiff argues that the opinion of his former psychotherapist, Jason McVicker, should have been given more weight. Mr. McVicker submitted a letter, which was written on March 11, 2015 that summarized his treatment relationship with Plaintiff. (R. 577). Mr. Vicker wrote that Plaintiff was a patient at various times over the past decade and most recently from the summer of 2013 to August of 2014, which was their last meeting. (*Id*.) Mr. Vicker noted that Plaintiff had made great progress and mastery in managing his symptoms. (*Id*.) Mr. Vicker also indicated that Plaintiff was still "…prone to bouts of intermittent rage, explosive outburst, and intensely negative perceptions of others." (*Id*.) The ALJ contrasted this with the fact that during the decade of time in which Mr. Vicker was treating Plaintiff, Plaintiff was working on international flights, serving passengers and always being in proximity to others. (R. 33). The ALJ gave Mr. Vicker's opinion little weight because he found it was unsupported by a majority of the objective findings in the record. The Court finds the ALJ's assessment to be supported by substantial evidence and is therefore affirmed.

## **CONCLUSION**

For the foregoing reasons, Plaintiff's motion is denied and the Commissioner's motion for summary judgment is granted. The final decision of the Commissioner is affirmed.

Entered: 2/6/2018

_____
U.S. Magistrate Judge, Susan E. Cox